UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

98 APR 29 PM 12: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JAMES C. LUMPKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CV96-S-3167-S |
| | ) | |
| ALETHEIA HOUSE, INC., | ) | |
| CHRIS RETAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTERED**

APR 2 9 1998

| | | |
|---|---|---|
| ANDREA MATHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CV97-S-1742-S |
| | ) | |
| ALETHEIA HOUSE, INC., | ) | |
| CHRIS RETAN, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

These actions are before the court on four motions: Andrea
Mathews' motion to quash the subpoena served on attorney James S.
Ward;  motion to quash subpoena filed by James S. Ward; defendants'
motion to compel discovery; and, Mathews' motion for an *in camera*
inspection and protective order.

Plaintiff Andrea Mathews alleges defendant Aletheia House
terminated her employment in retaliation for her opposition to the
termination of plaintiff James Lumpkin.  Mathews is a primary
witness in Lumpkin's case, as well as her own.  Mathews gave
deposition testimony in the Lumpkin action on May 30, 1997, prior

to the date she filed her own action (July 11, 1997). Defendants allege that Mathews waived the attorney-client privilege during her deposition, with regard to conversations with her former counsel, James S. Ward.   Consequently, defendants served a deposition subpoena upon Ward on January 29, 1998, seeking his testimony and documents relevant to the subjects about which Mathews had testified.

Mathews also claims damages for "humiliation, mental anguish, suffering, and loss of enjoyment of life." (Complaint at 4.) Defendants thus contend she has placed her metal condition in issue, and waived the psychotherapist-patient privilege recognized by the Supreme Court in *Jaffee v. Redmond*, ___ U.S. ___, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Accordingly, they seek to discover medical records from Mathews' psychologist. Mathews opposes such discovery, and requests an *in camera* review if this court determines the records are discoverable.

Finally, Andrea Mathews testified that her attorney advised her to keep a diary of events concerning her employment at Aletheia House.   Defendants seek production of that diary, but Mathews objects, asserting the attorney-client privilege and the protection afforded to materials prepared in anticipation of litigation.

### I.   MOTIONS TO QUASH SUBPOENA

#### A.   Background

James Lumpkin claims his employment was terminated on February 23, 1995, in retaliation for reporting alleged violations of the

2

ADA and Rehabilitation Act to the Alabama Disabilities Advocacy Program ("ADAP"). Those reports to ADAP were confidential, however. Thus, Aletheia House alleges it only learned that Lumpkin was the source of the ADAP complaints when Mathews volunteered that information to its executive director, Chris Retan.

During her deposition, Mathews testified that she informed Retan of Lumpkin's ADAP complaints on the advice of James S. Ward, her attorney from 1994 through her termination in March 1995.[1] She also related the substance of Ward's advice:

> Q. Well, what I guess what I'm trying to figure out is if you already knew that there was some potential problem with Mr. Lumpkin's employment, why would you go tell Mr. Retan that he had filed an ADAP complaint?
>
> A. I was advised by my attorney that it was my obligation as a program director to inform my executive director if there was an employee who was suing the executive director or agency as a whole. Or not suing but proceeding with a grievance. And —
>
> Q. Were you not concerned —
>
> MS. REISS: Please let her finish what she's going to say.
>
> Q. — about retaliation?
>
> A. Yes, I was concerned about retaliation. Yes, I was concerned about that. And I informed my attorney of that. And he said it's your obligation as his employer — as the supervisor to inform your supervisor of this.
>
> And I did that also believing that I was going to protect Mr. Lumpkin because if Mr. Retan then knew — Mr. Lumpkin — I recall Mr. Lumpkin informed me that he had signed that grievance, which meant that in my way of

---

[1]"Ms. Mathews subsequently sought the services of her present counsel once she was subpoenaed for deposition in the Lumpkin case in May 1997." (Mathews brief in support of motion to quash at 2.)

3

viewing it, at that point Mr. Lumpkin was going to be known as the party who filed it anyway.

And I thought that — I thought and my attorney thought that my knowing it and informing Mr. Retan would be a form of protection for Mr. Lumpkin because Mr. Retan would not retaliate as abruptly if he knew that his employer or his supervisor, direct supervisor knew that he was — had filed the grievance.

. . .

    Q.  Did your attorney tell you that ADAP had a confidential complaint procedure?

    A.  No.

    Q.  Did y'all discuss trying to find out?

    MS. REISS: I object to the form.

    A.  No.

    MS. REISS: I object to the form. You know that you can't ask her about what her [sic] and her attorney talked about, attorney-client privilege.

    MR. HARGROVE: She's waived that so bad.

    MS. REISS: She said he advised her at one point. She never talked about what their conversations were in detail at all. You know that is an absolute privilege, John.

    MR. HARGROVE: She has waived that privilege so — she sat here and discussed it. She's put it in an affidavit what they talked about.

    MS. REISS: No, she told what she's been advised about.

    MR. HARGROVE: I'm not asking her about any conversations with you, but she's clearly — she's clearly discussed what that attorney told her to do and that that's why she did something. And that's all I'm asking her about is that one issue as to why she did it.

I mean she can't use the attorney-client — she can't use her attorney as a sword and then jump back and say oh, I can't tell you the rest of what we talked about.

4

MS. REISS: She can absolutely say I was advised by counsel not to do X or advised by counsel not to do Y but not go into specific detail about conversations with her counsel. That is — you know that's Federal Rules of Civil Procedure, I think it's 33 or 32. She does not have to tell you what she said between her and her counsel.

MR. HARGROVE: She sat right there, Sandy, and said my attorney felt like me as a supervisor I needed to go tell. I mean, she's waived the privilege clear as a bell, especially as to this issue, and that's all I'm asking her about.

And don't tell me what I know. I mean, I've been down this attorney-client road probably ten times more than anybody else in this room I speculate. So that's all I'm asking her about.

MS. REISS: Rephrase the question.

Q. My question was did she or her attorney make any effort to try to find out whether or not ADAP had a confidential complaint procedure before she went to Chris and — Chris Retan and told him that this complaint had been filed?

A. First I would like to say on the record that I do not want to waive my right to privilege.

MS. REISS: She is not an attorney.

A. If I had known that that's where we were headed with this, I certainly wouldn't have — I thought we were asking and answering questions. I didn't know I was waiving a right. I wish you had said do you know you are waiving your right here, and I would have said no.

Q. I'm not trying to trick you. I mean, you said that you went to tell Mr. Retan, something very critical to this case, I mean extremely critical to this case, and you are saying the reason you did that was on the advice of counsel and the reason you did that, the reason your attorney gave you was because you as a supervisor had an obligation to do that.

I find that hard to believe because obviously I'm their lawyer and not yours. But you said that, and I want to know all that I'm entitled to know about that.

5

MS. REISS: Go ahead and you just answer the question.

A.   What was the question now?

Q.   The question was did y'all ever discuss determining whether or not ADAP's complaint procedure was confidential?

A.   No.

(Mathews deposition at 188-95 (emphasis supplied).)

In addition to the foregoing, defendants contend the following testimony by Andrea Mathews constitutes a waiver of the attorney-client privilege:

Q.   When did you start taping people at Aletheia House?

A.   I was advised by my attorney —

MS. REISS: Not this attorney, by another attorney.

A.   By another attorney.

Q.   Who was the attorney?

A.   Jim Ward.

Q.   Jim Wood?

A.   Jim Ward.

Q.   Ward, Okay.

A.   — to begin taping my conversations with Mr. Retan in approximately December of 1995.

MS. REISS: '94?

A.   I mean '94. Thank you. And my belief about that was that I would be protecting myself in that if Mr. Retan fired me, I would be able to take those tapes to the board and prove that I had been fired for the wrong reasons.

6

(Mathews deposition at 44-45.)

      Q.  When did you start keeping the diary?

      A.  I don't recall.

      Q.  The fall of '94?

      A.  I don't recall.

        MS. REISS: Object to the form.

      Q.  Was it before or after you started doing the tapes?

        Ms. REISS: Object to the form.

      Q.  Where is the diary now?

        MS. REISS: I believe she did it at the advice of counsel, John, for her counsel, so —

      A.  (Witness nods head.)  That's correct.

(*Id.* at 82.)

**B.  Discussion**

    **1.  Informing Retan of Lumpkin's ADAP complaints**

    The Eleventh Circuit holds that the attorney-client privilege is waived "where there has been a disclosure of privileged communications ...." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987). Moreover, by offering testimony as to a part of a privileged conversation, a party waives the right to claim the privilege as to the whole thereof. *United States v. Woodall*, 438 F.2d 1317, 1325 (5th Cir. 1971)(*en banc*).[2]  Finally, numerous

_____

   [2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7

courts hold that a party who provides deposition testimony regarding the substance of conversations with an attorney waives the privilege with regard to the subject matter of those conversations. *See Hollins v. Powell*, 773 F.2d 191, 196-97 (8th Cir. 1985)(where city's mayor "testified as to the substance of his conversations with the City attorney," without objection, city attorney could not assert privilege); *Weil v Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981)(when officer and director of defendant "disclosed the content of a privileged communication which [was] relevant and material to an issue in the case" he waived the privilege for defendant); *Naglak v. Pennsylvania State University*, 133 F.R.D. 18, 23 (M.D. Pa. 1990); *Thomas v. F.F. Financial, Inc.*, 128 F.R.D. 192, 193 (S.D.N.Y. 1989); *see also In re Von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter" (quoting 8 Wigmore, *Evidence* § 2327 at 638)).

Mathews' deposition testimony regarding the ADAP complaints revealed the substance of her conversations with James S. Ward. Ward told her that it was her "obligation" to inform Chris Retan of the ADAP complaints. (Mathews deposition at 188.) Furthermore, Ward "thought that ... informing Mr. Retan would be a form of protection for Mr. Lumpkin because Mr. Retan would not retaliate as abruptly if he knew that his employer or his supervisor, direct

8

supervisor knew that he ... had filed the grievance." (*Id.* at 189.) That testimony is sufficient to waive the attorney-client privilege, and defendants are entitled to depose Mr. Ward regarding his conversations with Andrea Mathews concerning whether she should disclose to her employer the fact that James Lumpkin had reported alleged violations of the ADA and the Rehabilitation Act to ADAP.

2. **Mathews' Objections**

a. **Lack of intent to waive the privilege**

Mathews claims there was no waiver of the privilege, because she did not intend to waive it. The only authority she presents in support of that argument holds that, in some instances, inadvertent production of privileged documents by the attorney is not tantamount to waiver of the privilege by the client. *See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83 (M.D.N.C. 1987). There is sparse authority on whether a client's testimony regarding conversations with her attorney constitutes a waiver, despite her subjective intent to retain the privilege.

In fact, this court has found only one case on point. In *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18 (9th Cir. 1981), "an officer, director, and alleged control person" of the defendant corporation disclosed privileged communications during his deposition. *Id.* at 23. The Ninth Circuit found

> The [defendant] has disclosed the content of a privileged communication which is relevant and material to an issue in the case. Against this, the [defendant's] bare

9

> assertion that it did not subjectively intend to waive
> the privilege is insufficient to make out the necessary
> element of nonwaiver.

*Id.* at 25. Similarly, this court finds that Mathews' bare assertion is insufficient to demonstrate nonwaiver of the privilege.

### b. Deposing opposing counsel

Mathews also argues that "the practice of deposing opposing counsel is highly unusual and disruptive, and is facing increasing criticism from the courts." (Mathews motion to quash at 7.) Defendants do not seek to depose opposing counsel, however. Rather, they seek to depose Mathews' *former* counsel regarding communications to which the attorney-client privilege has been waived.

Accordingly, this court finds that the motions to quash are due to be denied to the following extent: defendants are entitled to depose Mr. Ward regarding his conversations with Andrea Mathews in which they discussed reporting James Lumpkin's ADAP complaints to Aletheia House or Chris Retan.

### 3. Tape Recordings and Diary

Defendants also contend Mathews waived the attorney-client privilege when she testified that Ward advised her to keep a diary, and to surreptitiously record conversations with Aletheia House employees. (Defendants' response to motions to quash at 3.) Mathews' testimony reveals no substance of communications with her attorney, beyond the fact that such communications occurred.

10

Defendants may thus question James S. Ward on whether he advised Mathews to keep a diary or tape record conversations. They may not question Ward on the rationale for that advice, or the substance of the diary and tape recordings.

## II. MOTION TO COMPEL DISCOVERY

### A. Timeliness of Motion

This court's July 29, 1997 scheduling order provides: "All discovery must be commenced in time to be completed by March 13, 1998." Mathews argues that defendants' motion to compel is untimely, because it was filed on March 25, 1998. (Opposition to motion to compel at 5.) The relevant date is not that of the motion to compel, however. Rather, this court must determine if defendants "commenced" their efforts to obtain the diary and medical records in time to receive responses by March 13, 1998. Unfortunately, neither party provides this court with the date of the requests for production which first sought the disputed materials. Without such evidence, this court cannot conclude the motion to compel is untimely.

### B. Medical Records

Mathews asserts that she was "emotionally distressed" as a result of defendants' actions from March 1995 until January 1997. (Plaintiff's deposition at 439.) She claims that she did not seek treatment for her emotional injuries (*id.* at 450-51), but acknowledges that she attended "couples counseling" eight months later, in September 1997. (Plaintiff's brief in opposition to

11

discovery of medical records at 5.) Defendants thus seek to discover the records of Mathews' counseling to determine if factors other than the alleged retaliation caused or contributed to her emotional distress.

In *Jaffee v. Redmond*, ___ U.S. ___, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court recognized a psychotherapist-patient privilege in claims premised upon federal law. The Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 1931. The court also noted that "[l]ike other testimonial privileges, the patient may ... waive the protection." *Id.* n.14.

Numerous courts interpreting *Jaffee* have held that a party waives the psychotherapist-patient privilege by placing his or her mental condition "at issue." *Kerman v. City of New York*, No. 96 Civ. 7865(LMM), 1997 WL 666261 (S.D.N.Y. Oct. 24, 1997); *EEOC v. Danka Industries, Inc.*, No. 4:96-CV-323(CEJ), 1997 WL 809640 (E.D. Mo. Oct. 23, 1997); *Lanning v. Southeastern Pennsylvania Transportation Authority*, No. CIV. A. 97-593, 1997 WL 597905 (E.D. Pa. Sept. 17, 1997); *Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.*, 967 F.Supp. 346 (C.D. Ill. 1997); *Vasconellos v. Cybex International, Inc.*, 962 F.Supp. 701 (D. Md. 1997). By claiming damages for emotional distress, Mathews has placed her

12

mental condition at issue.  *See United States v. Sturman*, No. 96
CR. 318 (BSJ), 1998 WL 126066 (S.D.N.Y. Mar. 20, 1998)("a civil
plaintiff who brings a claim for mental and emotional distress"
waives the privilege); *Kerman*, 1997 WL 666261 at *4 (plaintiff who
claimed "great physical, mental and emotional damages from the date
of occurrence to present" waived privilege); *Lanning*, 1997 WL
597905 at * 2 (plaintiffs who claimed "compensation for injury to
their emotional well-being" waived privilege); *EEOC v. Danka
Industries, Inc.*, 1997 WL 809640 at * 4 (plaintiffs "seeking
damages for emotional distress resulting from sexual harassment"
waived privilege).

Mathews relies upon *Vanderbilt v. Town of Chilmark*, 174 F.R.D.
225 (D. Mass. 1997), to claim that she has not waived the
privilege.  The *Vanderbilt* court held the privilege was waived only
when the plaintiff testified about the substance of communications
with a psychotherapist.  *Vanderbilt* is contrary to the great weight
of authority discussing waiver of the privilege, and this court
chooses not to follow it.  *See also EEOC v. Danka Industries, Inc.*,
1997 WL 809640 at *3-*4 (criticizing *Vanderbilt*).

Finally, plaintiff relies upon Alabama and Florida cases which
hold that the psychotherapist-patient privilege is not waived by
placing mental condition "at issue."  Those cases are unpersuasive,
because they apply state law, rather than the federal common law of
privilege.  *See Vann*, 967 F.Supp. at 349 (finding the Illinois

13

Mental Health Confidentiality Act inapplicable to determination of privilege in Title VII case).

Accordingly, this court finds that Andrea Mathews has waived the psychotherapist-patient privilege by seeking damages for emotional distress. Even so, this court is persuaded that important interests require an *in camera* inspection before the documents are produced. Mathews has testified that the counseling was "very personal and very private." (Plaintiff's deposition at 501.) Moreover, Mathews' counsel represents that the communications of a "totally unrelated third party" are intertwined with Mathews' records. (Plaintiff's brief in opposition to discover of medical records at 10.) Accordingly, this court finds that plaintiff's motion for an *in camera* inspection and a protective order is due to be granted. Plaintiff shall submit copies of her counseling records to this court by May 7, 1998. This court will determine the relevancy of those records and the likelihood that they would lead to discovery of admissible evidence. *See Fed.R.Civ.P.* 26(b)(1). If records are released to defendants, this court will enter an appropriate protective order. The parties are directed to confer and attempt to agree upon the substantive protections that should attach to any such documents that may be subject to disclosure.

C.  **Diary**

Defendants also seek to discover the diary which Andrea Mathews made during her employment at Aletheia House. Mathews

14

testified that she began to surreptitiously tape record conversations and keep a diary on the advice of counsel, to protect herself in the event that her employment was terminated. (Mathews deposition at 81-82; 472-75; 487-89.) Defendants contend they are entitled to review the diary to ascertain "Mathews' contemporaneous observations of events while employed at Aletheia House." (Defendants' motion to compel discovery at 4-5.)

This court does not address Mathews' claim of attorney-client privilege, because the work product doctrine protects the diary from discovery. Where the "primary motivating purpose behind the creation of [a] document was to aid in possible future litigation," work product protection applies. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). The Eleventh Circuit holds that a waiver of the attorney-client privilege is distinct from a waiver of work product protection:

> The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege. *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir.1987). However, as the Fourth Circuit has observed in *In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir.1988), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989), the subject-matter waiver doctrine does not extend to materials protected by the opinion work product privilege. The *Martin Marietta* court's reasoning was that the plain language of Fed.R.Civ.P. 26(b)(3) suggests that opinion work product should not be subject to such an implied waiver, and that the rationale behind the doctrine (the fear that a party might "'make affirmative testimonial use'" of a communication and then seek to shield it from disclosure) does not apply to mental impressions and legal theories. *Id.* at 626 *1423

15

> (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d
> 1215, 1223 (4th Cir.1976)). We agree. Where a party
> asserts that he believed his actions to be lawful, he
> waives the attorney-client privilege as to what his
> attorney told him about the legality of his actions ...;
> his attorney's work product, however, is a different
> matter.

*Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386,
1422-23, *modified,* 30 F.3d 1347 (11th Cir. 1994). Mathews prepared
the diary on the advice of counsel, and considered the diary
necessary to protect herself in the event she was terminated. She
clearly believed that future litigation was possible.

Defendants have made no showing of "substantial need" for the
diary, or that they are "unable without undue hardship to obtain
the substantial equivalent of the [diary] by other means."
*Fed.R.Civ.P.* 26(b)(3). Accordingly, defendants are not entitled to
discover the diary.

### III. CONCLUSION

This court finds the motions to quash are due to be denied.
James S. Ward may be deposed about communications with Mathews
regarding the decision to report Lumpkin's ADAP complaints to
Aletheia House or Chris Retan. Defendants also may ask if Ward
advised Mathews to keep a diary and tape record conversations with
Aletheia House employees.

Defendants' motion to compel discovery is due to be granted to
the extent that Andrea Mathews shall submit copies of her
psychological counseling records for an *in camera* review by this

16

court. The motion to compel discovery is due to be denied as to defendants' request for a copy of Mathews' diary.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 29th day of April, 1998.


United States District Judge

17